# UNITED STATES DISTRICT COURT.

## IN RE JAMES KINGON.

Where solicitor of bankrupt moved that the assignee be ordered to amend his return in a certain respect, but nothing appeared to show wherein such amendment was proper or necessary, or what interest of the bankrupt would be effected,
*Held*—The assignee, on this certificate not showing the facts, is not required to make the amendment.

*Southern District of New York, February,* 1869.
*Before* JOHN FITCH, *Register.*

THE above entitled cause is now pending before me. That it appears by the schedules annexed to the petition of the above named petitioner for adjudication of bankruptcy and the amendments of the same, that the assets consist of a small amount of money, a few notes, and a large number of book accounts, amounting in the aggregate to about $17,000. There is no proof before me that any part of either of the notes or book accounts are collectable. The assignee, Stephen V. White made his return on the 10th day of November, 1869, under oath, after the return of the order to show cause, why the said bankrupt should not be discharged, the material part of which is as follows, to wit: " That he, said assignee, as assignee of the estate and effects of said bankrupt, has received on account of the said estate the sum of thirty dollars and fifty cents in money, mentioned in the amended schedules of said bankrupt, that he has paid out for account of said estate the sum of nine dollars and fifty cents for the publication of the notice of his appointment as such assignee, which sum has been refunded to him by said bankrupt; that he has also received from said bankrupt the sum of twenty-five dollars on account of his fees as such assignee; that he has also received a portion of

the promissory notes mentioned in the amended schedules of said bankrupt, but that all of said notes are as deponent is informed and believes, barred by the statute of limitations, and are by said bankrupt pronounced worthless, and deponent believes them to be of no value whatever; and that deponent as such assignee has received no other assets whatever on account of said estate.

The solicitor for the bankrupt upon petition and the proceedings and proofs in this cause, moves for an order requiring said assignee to amend his return as follows, to wit: " And that there has also come to my hands certain open accounts due to the bankrupt as member of the firm of Kingon and Elmore, as are set forth in schedule B 3 of amended schedules, which open accounts amount in the aggregate to $17,708.67. I have made no effort to collect the same or any of them, and have no knowledge that they can or cannot be collected."

The decision of this motion involves the questions of the rights, powers and duties of an assignee, and the power of the courts over them and their proceedings. It is to be regretted that the framers of the bankrupt law did not, in defining the duties of the assignee, more fully state the power and duty of the court to control his action, and to compel his obedience to its orders, but the law and practice of the courts give sufficient power to the courts for all practical purposes to compel the assignee to obey its orders.

In England, the courts hold an assignee to be a person appointed by the court during the pendency of a suit, to do and perform certain acts under the direction and order of the court, or under the provisions of some statutory enactment. (*Wyatt's Prac. Reg.*, 355). He is an officer of the court. (*Matter of Burke, B. and B.*, 74,) and cannot be disturbed by any body without leave of the court. (*Fairfield* agt. *Weston*, 2 *S. & S,*. 98; *Bryan* agt. *Cormack*, 1 *Cox* 422; *Wardel* agt. *Loyd*, 2 *Molloy*, 388; *Hutchinson* agt

*Lord Bassarene,* 2 *B. & B.,* 55 ; *M. S., case of Broad* agt. *Wickham,* 1 *Smith's Ch. Prac.,* 500). His appointment was provisional only, and was subject a all times upon proper cause shown to removal by the court. (*Skipp* agt. *Hamond,* 3 *Atk.,* 564 ; *Cooke* agt. *Gwynn,* 3 *Atk.,* 690). He was appointed by the court as an indifferent person and as an officer of the court to act on behalf of the parties in interest. (*Davis* agt. *Duke of Marlborough,* 2 *Swanst.,* 125). The court itself had the care of the property in dispute or effects of the estate, and the assignee was but the creature of the court. If he was interfered, intermeddled with or threatened with violence, the court would protect him and punish whoever molested him. (*Fitzpatrick* agt. *Eyre,* 1 *Molloy,* 171). Such was the practice of the English courts until the passage of *The English Bankruptcy Acts of* 23 *and* 24, *Vic. C.,* 134; *and* 12 *and* 13 *Vic. C.,* 106, provide that the majority in value of the creditors who have proved their debts may chose an assignee subject to the approval of the court. A similar provision was unfortunately contained in the insolvent laws of this state, usually known as the two-third act, allowing the creditors to petition the court for the appointment of a person as assignee, naming the person whose appointment they requested. It was optional with the court to appoint the person so named, or to appoint some other person. He was an officer of the court subject to removal by the court, had no powers except such as were conferred upon him by law and by the practice of the court, (*Verplank* agt. *Mercantile Ins. Co.,* 2 *Paige,* 452), and under the order and direction of the court exercised similar powers and duties as an assignee now does under the bankrupt act.

"In section 1st it is provided " that the jurisdiction of said courts *shall* extend to *all cases* and *controversies* arising between the bankrupt and any creditor or creditors who shall claim *any* debt or demand under the bankruptcy; to the collection of *all* the assets of the bank-

rupt; to the ascertainment and liquidation of the *liens* and other specific claims thereon; to the adjustment of the various *priorities*, and conflicting interests of *all* parties; to the marshalling and disposition of the different *funds* and *assets*, so as to secure the *rights of all* parties, and due distribution of the assets among *all* the creditors; and to *all acts, matters*, and things, to be due under and in virtue of the bankruptcy, until the *final* distribution and settlement of the estate of the bankrupt and the close of the proceedings in bankruptcy.

"Judge BLATCHFORD, *in re Glaser*, (*I. B. R.*, 73); *held* "that district courts had original jurisdiction in *all* matters and proceedings in bankruptcy, and that that jurisdiction extends to *all acts, matters*, and *things*, to be done under and in virtue of the bankruptcy." The jurisdiction of said courts sitting as courts in bankruptcy is *superior* and *exclusive* in *all* matters arising under the statute. The estate surrendered is placed in the custody of the court so sitting in bankruptcy, and the officer (*assignee or trustee*,) appointed to manage it is accountable to the court appointing him, and to that *court alone. No state court has jurisdiction in or can withdraw the property surrendered, or determine in any degree the manner of its disposition. (In re Barrow re Loeb, Simon & Co., re Winter*, 1 *B. R.*, 125 ; *in re Schnepf*, 6 *I. R. R.*, 214 ; *in re Bowie*, 1 *B. R.*, 185).

"The commencement of proceedings in bankruptcy at once transfers to the district court the jurisdiction over the bankrupt, his estate, and *all parties* and *questions* connected therewith, and operates as a *supersedeas* of *all* process in the hands of the sheriff of a state court, and as an injunction against *all* other proceedings than such as may thereupon be had under the authority of the district court, until the question of 'bankruptcy *shall* be disposed of. (*Jones* agt. *Leach et al*, 1 *B. R.*, 165 ; *Pennington* agt. *Sale, Phelan et al*, 1 *B. R.*, 157).

"The filing of a petition in bankruptcy at once brings

the property of the insolvent into the bankruptcy court, and places it in its custody and under its protection as fully as if actually brought into the visible presence of the court. Being in the custody of the court, *no other court can without, the permission of the court in bankruptcy, interfere with it,* and so to interfere is a contempt of the bankrupt court. (*In re Vogel,* 2 *B. R.,* 138; *In re People's Mail Steamship Company,* 2 *B. R.,* 170; *In re Kerosene Oil Company,* 2 *B. R.,* 164; *S C.,* on appeal, 3 *B. R.,* 31; *Breck & Terrell,* 2 *B. R.,* 190; *In re Wallace,* 2 *B. R.,* 52).

" The court has the power on the application of the assignee or trustee, to order the sale of encumbered property, free from encumbrances, transferring the liens from the property to the fund realized from its sale. (*In re T. R., Stewart,* 1 *B. R.,* 42; *In re Barrow, re Loeb, Simm & Co., re Winter,* 1 *B. R.,* 125; *In re McLellan.* 1 *B. R.,* 19; *In re Columbian Metal Works,* 3 *B. R.,* 18; *In re Salmons,* 2 *B. R.,* 19; *In re Alabama and Florida Rail Road Company,* 1 *B. R.,* 100; *Dwight & Ames et al.,* 2 *B. R.,* 147; *In re Schnepf,* 6 *I. R. R.,* 124).

" Any lien upon the property of a bankrupt, so long as the property is in the possession of the court, or its officer, the assignee or trustee, can only be *enforced* in the district court sitting as a court of bankruptcy. (*In re People's Mail Steamship Company.* 2 *B. R.,* 170; *Davis* agt. *Carpenter et al.,* 2 *B. R.,* 125; *Jones & Leach et al., B. R.,* 165; *In re Vogel,* 2 *B. R.,* 138; *Luckerman & Franklin, Av. S. Inst. et al.,* 1 *C. L. N.,* 370; *In re Kerosene Oil Company,* 2 *B. R.,* 164; on appeal *S. C.,* 3 *B. R.,* 31; *In re Rosenberg,* 3 *B. R.,* 33)". *Ruthington,* opinion as to powers of assignees under the court, &c., *B. R. Vol.,* 3 *No.,* 16.

The innovation upon the practice under the English common law of the courts appointing trustees, assignees, receivers, &c., caused by the passage of the English bankrupt act, was seriously felt by the loss of thousands upon thousands of dollars by creditors of estates, when assignees

were chosen by the creditors; the courts appointed fit and proper persons, assignees to execute the trust, whereas the creditors usually chose some respectable but inefficient person, through whose inefficiency large sums were lost to estates, which an efficient person would have collected. The same was true of assignees under the bankrupt act of April 4th, 1800, and under our late insolvent laws, which laws have been superseded by the bankrupt act of March 2d, 1867. The same fatal defect, the unfortunate provision allowing creditors to choose an assignee, is contained in section 13 of the bankrupt act of March 2d, 1867. I think it safe to say, that owing to this unfortunate provision, full one-fourth of the assets of bankrupts have been lost to the creditors, when, had the bankrupt act conferred upon the registers the appointment and control of the assignees, immense sums of money would have been collected, where under the law as it stands, assignees do not make any effort whatever to collect; this is the uniform opinion of the registers and the attorneys practicing in this court, as well as creditors who have learned a sad lesson by experience. By the bankrupt act of 1841, the court appointed the assignees. By the English bankrupt act the court could make any order to secure the proper fulfilment of the duties by the assignee, which was the reason why such large dividends were paid out of estates which were administered under said law, and could compel the assignee to execute any instrument necessary and proper in the proceedings in a cause; could punish him for any disobedience to any order or decree of the court, as for a contempt of court, such power was in the discretion of the Judge in bankruptcy, who is an officer of the court of bankruptcy in England, having the same powers under the English law as a register in bankruptcy has under the American bankrupt law of March 2d, 1867. (*Ex parte Bates*, 21 *Law J. Bank.*, 20; 16, *Jurist*, 459).

The identical power is given to the court by section 18

of the bankrupt act of March 2d, 1867, as follows: "That the court after due notice and hearing, may remove an assignee for any cause, which, in the judgment of the court, render such removal necessary or expedient."

"An assignee refusing or unreasonably neglecting to execute an instrument when lawfully required by the court or disobeying a lawful order or decree of the court in the premises, may be punished as for a contempt of court."

By rule 19 of the general orders in bankruptcy, the duties of an assignee are in a measure defined and his actions governed by the order of the court. An assignee cannot even designate a newspaper in which to publish the notice of a sale of the bankrupt's estate. Such papers must be designated by the court or register, (*Section* 28 *Bank. Act and General Orders,* 21,) and may also by an order authorize the assignee to sell "any specified portion of the bankrupt's estate at private sale." And in making sales of real estate, the court or register can authorize the sale thereof in parcels, and may, under the direction of the court submit any controversy arising in the settlement of the demands against the estate, or debts due it, to the determination of arbitrators, &c. (*Section* 17, *Benedict U. S., Circuit Ct. Repts. Vol.,* 2, 100).

All sales of property belonging to the estates of bankrupts made by holders of deeds of trust, mortgages, or judgment liens, are unlawful unless made by permisson of the court after due notice of such application has been given to the assignee. (*In re Bigelow,* 1 B. R., 176; *Davis* agt. *Carpenter,* 2 B. R., 125; *In re Rosenberg,* 3 B. R., 33.)

The court, after due notice and hearing, may remove an assignee for any cause which in the judgment of the court renders such removal necessary or expedient. That an assignee may, with the consent of the court, resign his trust and be discharged therefrom. Vacancies caused by death or otherwise in the office of assignee may be filled by

appointment of the court. From the authorities above quoted, and the sections of the bankrupt act above cited, it is plain that an assignee is an officer of the court, subject to its control, and can be removed by the court for any good cause shown, and must obey the orders of the court, and when he so obeys, he is protected by the court.

The title to the property of the bankrupt immediately upon the filing of the petition is transferred to the court, and is vested in the register to whom the cause is referred, who is to keep it safely until it can be turned over to the assignee when appointed. (*In re Hasbrouck*, 6 *I. R. R.*, 115; *S. C.*, 1 *Bt.*, 402,) and the register may appoint a watchman or custodian to take charge of the property. (*In re Bogart, et al.*, 2 *B. R.*, 178; *In re Shaffer, et al.*, 2 *B. R.*, 178,) and has the power to order the payment of fees and expenses incurred in the proceedings out of the funds in the hands of the assignee. (*In re Lane*, 2 *B. R.*, 100,) and upon the appointment of an assignee, is to convey by deed all the property of the bankrupt of whatever name or nature except that which is exempt by law. The assignee then proceeds in accordance with sections 14, 15, 16, 17, 18, 25, 26, 27, 28, 35, 36, 37, 39, 42, and 48 of the act.

Assignees will find it to their advantage to take the orders of the court when they contemplate doing any important act, that the registers should explain to them their duties, as the registers are familiar with the duties required of assignees. Any person interested in the acts of an assignee may apply to the court for an order requiring of such assignee the specific performance of any of his duties; and that in this case I have the power at this stage of the proceedings to grant the order asked for. (*H Gettleston, Vol.*, 1 *B. R.*, 170). It was plainly the intention of congress to give the registers, acting as assistant district judges, the same power in all respects in cases pending before them, that the district judge has; such has been the uniform decision of all the district judges and the registers who have

written on the subject. Such power was absolutely necessary to be given to the registers in order to enable them to discharge the judicial duties devolving upon them. It would be an intolerable burden placed upon the district judges if, in addition to their present onerous duties, they were compelled to hear and decide the great number of applications necessarily made to the (register) court during the pendency of causes before them. It would occupy the entire time of the judges in hearing motions and granting necessary orders, which judicial duties by the bankrupt act and the decisions of the courts, the registers are required to perform. (1 *B. R.* 170). Experience has shown that the bankrupt act and the decisions of the court, has not conferred too much power upon the registers, but on the contrary too little; and the amendment of the bankrupt act, giving the registers the entire. administration of the law, would immensely facilitate the transaction of business, and relieve the district courts of an intolerable and unnecessary burden. Appeals from the register's decision should be to the district court in the same manner as appeals are now taken from the district to the circuit court.

The supreme court, of this state, in general term, first judicial district, INGRAHAM, J., held that an assignee was an officer of the court, and it was the duty of the court to make all orders to secure the proper fulfillment of his duties, and such has been the uniform decision of all our state courts. The right, duty and power of the court to control the action of assignees is clearly given by section 18 of the bankrupt act, and it is also in the inherent power of the court to exercise a sound discretion and controlling jurisdiction of its officers and suitors, as well as the suject matter of the action in any proceeding pending before it. (18 *Wend.*, 652 ; 1 *Denio*, 659 ; 11 *Johnson*, 254 ; 1 *Gra. Prac.*, 3*d Ed.*, 661 *to* 675). In this case it is no hardship asked of the assignee to make the amended return asked for. It is right, just, equitable and proper that he should do so, and

a refusal on his part would be unjust, oppressive and improper, and the petitioner has a right to ask that it be done; at the same time the assignee must be paid a proper compensation, to wit: the sum of ten dollars therefor. I therefore hold that the assignee, Stephen V. White, upon the payment to him of ten dollars must make and execute under oath and deliver to the register, an amended return containing the amendments asked for, which amended return will be of the date of the original return and to be executed *nunc pro tunc.*

The assignee, by his counsel, contends that the return already made is all the return, if any, he is compelled to make.

BLATCHFORD, J.—No reason is shown why the assignee should make the addition suggested to his return, nor is it shown how such addition is proper or necessary, or what particular object is to be subserved by his making it, or what interest of the bankrupt is to be promoted by making it, or to be injured by not making it. I therefore decide that the assignee is not required to make it.

NOTE—It is to be regretted that the motion papers which contained all the facts showing the necessity for the additional return by the assignee were not before Judge BLATCHFORD, as a decision upon the *principle* of the rights, powers and duties of an assignee, and the powers of the court over him under the bankrupt law, discussed by the Register, is very much wanted, to settle the practice on these points. *(Ed.)*